330 S.E.2d 225 (1985)
STATE of North Carolina
v.
Paul Graham FERRELL.
No. 8421SC928.
Court of Appeals of North Carolina.
June 4, 1985.
Appeal Dismissed August 13, 1985.
*226 Atty. Gen. Rufus L. Edmisten by Sp. Deputy Atty. Gen., Isaac T. Avery, III, Raleigh, for the State.
David E. Crescenzo, Winston-Salem, for defendant-appellant.
BECTON, Judge.
In this driving while under the influence of an impairing substance case, defendant, Paul Graham Ferrell, contends (1) that the relevant statute, N.C.Gen.Stat. Sec. 20-138.1(a)(2) (1983), which proscribes driving after consuming sufficient alcohol to have a blood alcohol concentration of 0.10% or more at "any relevant time after the driving," is unconstitutional in that the statute is vague and uncertain, and in that it otherwise violates his substantive due process rights; (2) that the "results of the chemical analysis of the breath should not have been allowed into evidence because there was no foundation for the testimony;" and (3) that the trial court erred by "permitting the State to question the defendant regarding his failure to testify in the district court trial." We find merit in defendant's third argument and accordingly award him a new trial.

I
The recent Supreme Court decision in State v. Rose, 312 N.C. 441, 323 S.E.2d 339 (1984), effectively disposes of all of defendant's constitutional challenges to G.S. Sec. 20-138.1. The Supreme Court in Rose held that the 0.10% blood alcohol concentration standard in the statute is not unconstitutionally vague simply because a drinking driver does not know precisely when he has reached the 0.10% level and further that the statute is not unconstitutional on the theory that blood alcohol measurement made sometime after drinking may reflect a driver's physical condition so dissimilar from his condition while driving that it bears no reasonable relationship to the State's legitimate goal of penalizing impaired drivers.

II
We summarily reject defendant's second argument that an insufficient foundation was laid for the admission of the breathalyzer test results. The evidence, both circumstantial and direct, including defendant's statement to the arresting officer, is overwhelming that the defendant was the driver of the car. Additionally, the State offered substantial evidence that the defendant consumed alcohol before or during the time he drove. Defendant's admission that he had consumed three beers prior to the accident and his further statement that he drank several big swallows from a Jack Daniels bottle given to him by an individual who picked him up after the accident and asked him if he wanted a drink to calm him down, were properly admitted in evidence. Defendant's argument goes to the weight to be given to the chemical analysis and not its admissibility. Consequently, the State introduced sufficient evidence to lay a foundation for the admissibility of the chemical analysis.

III
We agree with defendant's final assertion that "the trial court committed prejudicial error by permitting the State to question the defendant regarding his failure to testify in the district court trial." As the following colloquy shows, the State, by inquiring into defendant's failure to testify in district court, did more than attempt to impeach defendant with his prior silence considering his allegedly belated attempt in superior court to establish his defense that the alcohol concentration in his blood was caused by drinking after the accident as opposed to drinking before the accident:
Q. Do you remember being in District Court on this charge?
A. Yes, sir, I do.
Q. Did you ever or anybody ever mention that you had been drinking after the accident on that occasion?
Mr. Crescenzo: I object, Your Honor.
The Court: Overruled.
A. I did not take the stand on that occasion. We did not put up a defense.

*227 Q. Did anybody mention at all that you had been drinking after the accident?
A. No, sir.
Q. Now, you have had time to speak with your attorney since the accident, haven't you?
A. Yes, sir.
Q. And you have had time to speak with everybody involved since the District Court case, haven't you?
A. Yes, sir.
Q. And you know that if someone drinks after the accident, that would be a defense to this charge, don't you?
A. No, sir.
Q. This is the first time we have ever heard of you drinking since this accident, isn't it?
Mr. Crescenzo: I object, Your Honor.
The Court: Sustained.
Q. You never told the officers on November 16th, 1983, that you had been drinking after this accident, did you, Mr. Ferrell?
A. No, sir, I didn't.
Q. As a matter of fact, you refused to answer any questions, didn't you?
A. Yes, sir, I did.
The confluence of N.C.Gen.Stat. Sec. 8-54 (1981), N.C.Gen.Stat. Sec. 7A-290 (1981), and defendant's constitutional right not to testify and to have counsel represent him compels us to find error by the trial court in permitting the State to question defendant regarding his failure to testify in district court.
G.S. Sec. 8-54, in pertinent part, provides that:
In the trial of all indictments, complaints, or other proceedings against persons charged with the commission of crimes, offenses or misdemeanors, the person so charged is, at his own request, but not otherwise, a competent witness, and his failure to make such request shall not create any presumption against him.
The language of the statute is unmistakable, and our Supreme Court has made it clear that the statute prohibits the district attorney from making direct, or even indirect, references to a defendant's failure to testify. State v. McCall, 286 N.C. 472, 212 S.E.2d 132 (1975), and State v. Monk, 286 N.C. 509, 212 S.E.2d 125 (1975).
G.S. Sec. 7A-290 provides, in pertinent part, that: "[a]ny defendant convicted in district court before the judge may appeal to the superior court for trial de novo." (Emphasis added.) And, "[t]he trial de novo is not really an appeal on the record. It is a new trial as a matter of absolute right from the beginning to the end. It totally disregards the plea, trial, verdict, and judgment of the District Court." State v. Brooks, 287 N.C. 392, 405, 215 S.E.2d 111, 120 (1975).
The prejudice inherent in allowing the district attorney to question defendants at superior court trials regarding their choice not to testify at the initial district court trial or hearing is obvious. Counsel often advise defendants not to testify or not to present evidence at district court hearings for a number of reasons, one of which, specifically approved by our Supreme Court as well as by the United States Supreme Court, is "to learn about the prosecution's case and ... not reveal his own." Id. at 405, 215 S.E.2d at 121 (quoting Colten v. Kentucky, 407 U.S. 104, 118, 92 S.Ct. 1953, 1961, 32 L.Ed.2d 584, 594 (1972)). Additionally, a defendant in district court may, on the advice of counsel, opt to roll the die, not testify, and then determine, depending on the district court's sentence, whether to appeal. The trial lawyer who knows his case, knows what kind of impression the defendant will make before the judge, and knows the habits, or even the idiosyncracies, of the particular judge hearing the case, may strategically advise his client not to take the stand. On the other hand, a jury of laymen (and it would be equally prejudicial if just one juror did) could, as suggested by defendant in his brief, "conclude that the failure to testify meant that the defendant either had something to hide, or, as was the obvious intent in the instant case, that the defendant had developed his story only after hearing the *228 State's case and conferring with counsel." This danger is precisely what the law addresses. The State's impeachment in this case adversely implicated defendant's right not to testify in district court as well as his right to counsel. Further, it violated both the law and spirit of G.S. Secs. 8-54 and 7A-290.
For the above reasons, defendant is entitled to a
New trial.
WEBB and PARKER, JJ., concur.